Good morning, Your Honors. May it please the Court. My name is Morgan Russell for the petitioner, Raj Kumar. Before getting into the kind of meatier issue of the nexus as to asylum, I wanted to just mention on his cat claim before I forget at the end. The government has acknowledged that the agency below made no finding as to past torture. And as this Court has said repeatedly, including more recently in Avendano in 2015, that is the principal factor on which the agency should rely in making a cat determination. So I think that at the very least, this should go back to the agency for the IJ to make a finding one way or another as to whether Mr. Kumar suffered past torture as a starting point for a proper cat analysis. Are we talking about the Barajas-Romero issue? No, that's as to withholding. I'm talking about right now Convention Against Torture, the third claim. Was there evidence there was anything other than somewhat rough treatment at the hands of police? Well, I think rough treatment is an understatement. He was beaten repeatedly while in detention to the point that the first one left him hospitalized for three days. He was also beaten on the soles of the feet, which is a recognized torture method. But again, because the agency didn't make a finding one way or another, and that's the starting point for this analysis, I think it should go back for, in addition to the other errors, the sort of misrepresentations of the record as to passage of time and lack of interest in him currently. I think it should go back for a cat for those reasons. Well, we're talking about 14 years, are we not? Well, no. It was only the year prior to the hearing that his wife reported that the police in December 2013 had still come and still been threatening to kill him upon his return. So when the IJ said that there was no indication that anyone was interested in torturing him, that's simply not true. Just six months earlier, the police had said they would kill him if they found him back in India. Okay. And going back to your very first statement, did I understand you to say that the government agrees? Well, they acknowledge in their brief that there was no finding on the issue of past torture, which is a part of the torture analysis and which this Court has called the principal factor and the starting point for that analysis. As to the Barajas issue on the second claim withholding, the parties do agree that at the very least, this case has to go back for a new analysis as to nexus for withholding under the less demanding a reason standard articulated in Barajas. Now to the central issue of nexus to asylum. In Kumar v. Gonzalez in 2006, which is two years after Dino v. Ashcroft, this Court held that evidence that an applicant had been persecuted, quote, as a result of the Jammu and Kashmir police's mistaken belief that he was associated with a Muslim terrorist group, compelled the Court to rule that he had suffered persecution on the basis of an imputed political opinion. Here's the point, Mr. Russell. I'm having difficulty understanding if there's a difference between a terrorist and a political militant. Because I'm thinking of the Dino case and the Singh case. In the Singh case, apparently the panel there thought that any attachment to militancy imputed a political opinion. In Dino, it was just the opposite. If he was a criminal, he was a criminal. And just because the politics had changed in Romania, that made no difference. Let me ask you this. Do you see a terrorist as a criminal and not a political activist? I think you could categorize it as either. I would say that in Dino, there was no issue of him being associated with a terrorist group at all or any kind of political terrorist group. He had been a soldier in the pre-revolutionary government. There was no indication that no allegation had been associated with a political terror group. Well, the army under Ceausescu in Romania was killing protesters. How is that not an act of criminal terrorism? Well, I think we don't normally talk about terrorism as being committed by a legitimate government. And it was for the legitimate government at the time, and he was following orders. I think those are things that would be considered war crimes rather than terrorism. Well, the distinction, though, in Dino was that the court saw the investigation of the crimes of the Ceausescu regime as a legitimate police inquiry. And, therefore, persecution was the wrong word to use to attach to a legitimate interest of the Romanian government. Why doesn't India have a perfectly legitimate interest in rooting out Kashmiri separatists? Well, I think the question really isn't whether it's the legitimacy of the investigation. Singh held, specifically referring to Dino, that Dino, quote, one, is the subject of a legitimate law enforcement investigation, and, two, offers no direct or indirect evidence that he was subjected to harsh treatment because of a protected ground. And Singh also repeatedly held that persecution due to the mistaken belief that an individual is a terrorist or associated with a terrorist group is persecution on account of an imputed political opinion. That holding is directly on point. The agency below in the government here, the only real distinction they can try to draw from Singh and also Kumar, which is directly on point, from 2006, but the only thing they point to in Singh is that there the police used these words of describing the applicant as, quote, a traitor and said he was, quote, working against the government by helping an unidentified Kashmiri terrorist group. Was there any similar evidence as to Kumar? All I could see in the record was the police said that Kumar had joined hands, that was the phrase, with the Kashmiri militants. There was nothing about him working against the government. There was no accusation of him being treasonous. It seems to me that there's a difference between joining hands with terrorists and being accused of working against the government. I think that's not right in a couple of different ways. So, first, the Singh court repeatedly used sort of the characterization of mistaken belief that the individual is a terrorist or associated with terrorists interchangeably with this formulation of working against the government. And I think that makes sense because they're one and the same thing. Here we have precisely those same allegations of treason and working against the government in slightly different language. We don't have the allegation of treason or working against the government. That's the difference between the police allegations in Singh and the lack of them here as to Kumar. I don't think so. So I would say that. Would you point to the record of any police allegations as to treason or working against the government? Give me the citations, please. Yes. So they repeatedly accused him of sheltering, aiding, withholding information about, and joining a very specific Kashmiri separatist terror group, L.E.T. The record at AR 234 and 236 shows that L.E.T. is, quote, primarily committed to destroying India, that its primary objective is the liberation of Kashmir and the destruction of India. So to accuse an Indian citizen of aiding and joining a specific political terror group committed to the destruction of India is very literally to accuse that person of being a traitor and of working against the government. The substantive allegation is exactly the same as in Singh, and the activities of which the applicant was accused, hiding information about the terrorists, association with the terrorists based on one relationship with a suspected terrorist, are exactly the same. I really do think that this case is on all fours with Singh and also with Kumar for those reasons. I would also point the court to footnote 7 in Singh. That's 764F3 at 1162, note 7, responding to the dissent in that case, which I think is really the very same reasoning that the IJ gave here and that the government pushes before this court, that to the extent the dissent makes the extraordinary claim that the police could not have imputed a political opinion to Singh because they interrogated him for information about Khan, the suspected terrorist, such a claim is flatly at odds with our precedent. The court then cited Kumar as, quote, finding a nexus to an imputed political opinion in a case in which the police told the petitioner that he, quote, would be killed if he did not disclose the identities of Muslim terrorists. I'm trying to follow your distinction. Is the distinction that if the police turn out to be mistaken, that undermines the legitimacy of the investigation and turns what would seem to me to be a reasonable inquiry into someone's sentiments? Well, it's not my distinction. It's this Court's distinction in Singh. And Dino, weren't they mistaken about Dino? Did it turn out factually that he had actually never been assigned to one of the units? That's what he claimed. I think the key distinction that, again, isn't mine, but this Court's in Singh, is the accusation of being associated with a terrorist group, a political terror group, because that group is understood to have an anti-India political opinion. And I see my time is up. Thank you. May I please report? Matthew Spurlock on behalf of the United States. In this case, substantial evidence from the record supports the agency's conclusion that the Petitioner did not show that the police targeted him in the 2004 beatings that he received by the police in India on account of an imputed political opinion. The primary issue in this case is really the distinction between Singh and the Dino case, as the Court was discussing earlier. The most important distinction between this case and the Singh case is the Singh Court relied primarily on statements that the police made to Singh during the incarceration of Singh. And what they relied on was the police's statements to Singh that he was a traitor and that he was working against the government. And those are the two things, that's the primary factor that the Court relied on in Singh and as well as the Hu case, where they looked to what the police said and they considered that to be direct evidence of imputed political opinion. In this case, you don't have that direct evidence. What you have in this case is you have, which is also different from Singh, you have a situation where the police not only don't refer to the Petitioner as a traitor, but instead they actually enlist him in their investigation to find the individual that the Petitioner had as a tenant, I believe it was Mr. Khalid. And that's, in fact, exactly what they said to him. They said, we're going to release you from incarceration. Now, we can agree that the tactics that were used by the police in India were abhorrent, but that doesn't change the legitimacy of their investigation to find a terrorist. And that's essentially what we can look to what the police did in this case, which is different from Singh, is that they said to the Petitioner, we're going to release you in order to go find Mr. Khalid, this individual that you had as a tenant in your home. Kennedy, would you please tell us your view of the portions of the record which Mr. Russell cited to show the Kashmiri militants were attempting to overthrow the government of India? There's no dispute in this case that the Kashmiri group that the police were targeting in this case in their investigation were terrorists. And that's what Counsel Petitioner just cited. But they also had a political view, didn't they, a political motive? Absolutely. And there's – and we don't know what Mr. Khalid, the tenant of the Petitioner, we don't know what his political opinion was. We do know that the police were seeking him because they believed he was a member of this terrorist group. That's what the investigation was. Don't we know if he was a member of the – personally he was being sought was a member of the Kashmiri militants. Don't we know that the Kashmiri militants had a political view, and can't that be imputed to Mr. Kumar? Well, we can take a step back. We can say that the group that they believed him – the tenant, not Mr. Kumar, but the tenant, Mr. Khalid, that they believed that individual was a member of was a terrorist group. We can agree with that. There's no problem with that. And that's what Petitioner's counsel cited, too. Not only terrorist group, but terrorist group with a political opinion. I believe they were – that group was intent on overthrowing the government of India. That was the Kashmiri terrorist group, did have political opinions. Is there any terrorist group you can identify that doesn't have a political opinion? That's absolutely our point, Your Honor, is that if the only distinction here is whether or not the investigation against the tenant was an investigation of a political opinion, we don't really know that because we don't know exactly what Mr. Khalid's political opinion was. We're just asking the question, was any political opinion imputed to the Petitioner in this case? And based on just the actions of the police and the investigation, we argue that that's not enough under the Dineen case to say that that was – that any political opinion of Mr. Khalid was imputed to the Petitioner in this case. Let's say that we were to conclude that Singh and Dineen were absolute loggerheads with one another. What is the most meaningful distinction you can point to? And if you can't, what should we do about it? If – you're asking me, Your Honor, if – We see them in absolute conflict. Between Dineen and Singh? I think the primary issue is the question of what constitutes direct evidence. First of all, is there – the first question that you have to ask in Dineen is, is there a legitimate investigation? And you can't get past whether there was political opinion that was imputed until you get to that question. If there's a legitimate investigation here, which Petitioner's counsel argues there's no legitimate investigation here, and relies primarily on the argument that the – sort of the tactics and the nature of the investigation was not legitimate, but that's not what we're looking at. We're looking at do the police in this case have a legitimate investigative purpose for taking Mr. – taking the Petitioner in this case into custody, and looking into what his contacts were, and if, more importantly, if he can assist them in finding Mr. Khalid, the suspected terrorist. That's what – that to me is the primary difference. The Petitioner also makes the argument that in the Dineen case, the – Dineen did not object to the – the argument that his case was legitimate. He simply said, yeah, it makes sense that if the Romanian people were looking for individuals who had killed innocent civilians, that they would conduct an investigation, and I was swept into that, although by mistake. But that's absolutely no different than the case right here with – with the Petitioner. If the – certainly the Indian government has a legitimate purpose to seek out people that are attempting to overthrow the government and are attempting to commit acts of terrorism, as this group had done. LET, we have designated as a terrorist organization, haven't we? Yes. Yes. Absolutely. And we don't – we don't dispute that the organization they believed Mr. Khalid was a member of, which was the Petitioner's tenant, we don't dispute that that individual was suspected of being a member of an actual terrorist organization. And I think going back to the difference between Dineen and Singh, the only – the only information that's really different is that in the Singh case, the Court zeroed in on language that was spoken by the police, which was this individual is a traitor, this individual is against the government. And you don't have those same exact statements in this case. The only statement – I'm sorry, Your Honor. I – something I should have asked Mr. Russell, but I'll ask you. Is the standard of review here dispositive? Is this an issue where the BIA is making a factual determination and is conclusive unless the evidence is compelling the other way under Elias Zegarayas? That's exactly correct, Your Honor. The standard review in this case is substantial evidence. The Court would have to find that the evidence compels a conclusion different from what the Board found, which was, first of all, that this was a legitimate investigation that the police were conducting in India, and, two, that there is no evidence that indicates that the police had imputed a political opinion of the Petitioner. More than that, no evidence. The evidence has to be compelling the other way. Correct. The Court would have to find the evidence compels a different conclusion than what the Board concluded in this case. Counsel, I'm interested in your response to Mr. Russell's observations on the cat claim, particularly the absence of a finding. Yes, Your Honor. I'll address that at this point. The agency in this case, when they made their cat determination, focused primarily on two factors. One, the passage of time from when these events occurred to now. The beatings that were in the incarceration of the Petitioner in this case occurred in 2004 on two occasions, before he left and departed to go to Canada. That's the first issue. This has been a long time. Now, it's true that the Petitioner presented evidence that, in 2013, his wife, who still resides in India with, I believe, his four children, was approached by the police who were still seeking Khalid and made threats to Petitioner's wife. Now, it's true that they did say, we're looking for your husband, supposedly, and we're going to kill him if we find him. But the court found that that was attenuated enough from the date that they considered this issue from 2013. You're still talking five years. And, in addition, the board and the immigration judge relied on the fact that Petitioner in this case could also, because he only was having trouble in the region, and Petitioner makes an issue of the fact that he lived in Jalandhar in Punjab, but the incarcerations took place in Jammu and Kashmir. But there's no response to the argument that, certainly, that's one region of India, and there's no indication whatsoever that Petitioner couldn't relocate in a different region in which he would not face trouble from the police in this case. I'm out of time for the questions. Thank you. Kennedy. Would you like to do, rebut for a minute or two? Yes. I think first to Judge Beyer's question about the standard of review. So one thing is that I do think that even under the substantial evidence standard, sort of looking at this as a factual issue and whether the evidence compels a contrary result, that's the determination that this Court reached under sort of, at least in Kumar, evidence at least as I think evidence even sort of precisely the same or weaker here as to sort of more general allegations of association with a terrorist group. In Singh, you know, the government, again, says we don't have these kind of magic words, traitor, working against the government. I still think that those are substantively the very same as the allegations here. And in both those cases, the Court held that the record compelled the conclusion that the nexus was established. Here, though, I also think there's a legal error in that this Court in Singh already laid out a distinction from DINU, and the agency, DINU, Singh was cited in detail to the BIA in prior counsel's BIA brief. The BIA did not engage with those distinctions from DINU that this Court drew. Instead, sort of blew by it, saying, you know, I think incorrectly that the only kind of, that you have to have these magic words of traitor or working against the government. I think that's not right. I think in response to what Your Honor mentioned, that, you know, what we mean by terrorism, all terrorist groups have a political opinion. I think that that is sort of the background notion that informs the key distinction in Singh that comes from Kumar, that mistaken belief of association with a terrorist group is an imputed political opinion, unlike other kinds of sort of non-political, non-terror criminal activity. I think I agree with you to a point, but let me put it this way. If the distinction is that a legitimate investigation, terrorism, we concede would be legitimate, does not yield persecution, is the persecution arising in the fact that the police are mistaken in the approach that they make to the person, or does a judge reviewing the case have to make his or her own determination as to whether the police actually were acting legitimately or not? I think certainly Singh, following Kumar, holds that the mistaken belief that someone's a terrorist is imputed political opinion. I think that probably persecution that was, you know, I don't think a case has said this, but it seems like perhaps persecution that was motivated by a correct belief that someone is a terrorist would also be on account of that terrorist's political opinion. That person would be barred from asylum because of their terrorist activity, though, under the terrorism bars to asylum. They could maybe get cat protection if they would be tortured because of those things in their home country. So ultimately an American court really gets drawn into trying to make judgments about the legitimacy of not only police aims, but also the methods that they use to accomplish them. I don't think, you know, I know that our opening brief talked about legitimacy. I think that's a bit of a red herring here. I think, you know, the legitimacy of the investigation is sort of aside the point under Singh. The question is, was the motive because of the belief, mistaken belief that the person was a terrorist? And we have exactly that here. And so I'd submit. But your point is that all terrorists are politicians. Well, I think that was Judge Stearns' point. My point is that at least here we know that this group was. And I think that that's sort of the notion that also comes through in Kumar and Singh. That's why terrorism is different from kind of non-terrorist criminal activity. Thank you very much. Thank both parties for a very illuminating argument. And the case of Kumar v. Sessions will be submitted.
judges: O'scannlain, Bea, Stearns